No. 92-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

TRADERS STATE BANK OF POPLAR,

     Plaintiff and Respondent,

-vs-

JOHN J. MANN and MANN FARMS, INC.

     Defendants, Third-Party Plaintiffs
         and Appellants,

-vs-

NORTHEAST MONTANA BANK SHARES, INC.;
JOHN WITTE; RICHARD LOEGERING; GERALD KREIG;
BRUCE A. FREDRICKSON; CHARLES R. CASHMORE;
MALCOLM H. GOODRICH; CROWLEY, HAUGHEY, HANSON,
TOOLE & DIETRICH,

     Third-Party Defendants and Respondents.

FILED

MAY 1 3 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Roosevelt,
               The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          John J. Mann, Pro Se, Wolf Point, Montana
          Terry Wallace, Attorney at Law, Missoula, Montana

     For Respondent:

          Bruce A. Fredrickson, Ronald R. Lodders; Crowley,
          Haughey, Hanson, Toole & Dietrich, Billings,
          Montana

               Submitted on Briefs:  December 10, 1992

                       Decided: May 13, 1993

Filed:

                           Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

John J. Mann and Mann Farms, Inc. appeal from orders of the Fifteenth Judicial District Court, Roosevelt County, granting summary judgment and dismissing third-party claims. They also appeal an order of the District Court denying a motion to dissolve an injunction. John Mann appeals the contempt order entered against him for refusing to comply with the injunction. We affirm in part, reverse in part and remand.

We phrase the issues on appeal as follows:

1) Does the failure of John Mann and Mann Farms, Inc. to post a supersedeas bond on appeal or otherwise stay the proceedings below render this appeal moot?

2) Did the District Court err in concluding that the claims the Mann Family asserted against the third-party defendants did not constitute sufficient grounds for relief from the Mann I judgment under Rule 60(b), M.R.Civ.P.?

3) Did the District Court err in granting summary judgment for the Bank on its foreclosure complaint?

4) Can the District Court's grant of summary judgment on foreclosure be upheld as to Mann Farms under the doctrines of judicial estoppel, equitable estoppel or quasi-estoppel?

5) Did the District Court err in refusing to dissolve an injunction and in finding John Mann in contempt for failing to abide by the injunction?

The details surrounding this appeal constitute a morass of

2

factual and procedural intricacies. In 1976, Wilbur, Edna, John and Frances Mann formed Mann Farms, Inc. (Mann Farms). (Mann Farms and the individual Mann family members are referred to collectively herein as the Mann Defendants.) They began banking with Traders State Bank of Poplar (the Bank) and operated for several years on an unsecured basis. Mann Farms' debt load increased, however, and in 1983, the Bank required security for Mann Farms' line of credit. The parties began negotiations in late April of 1985 in attempts to reduce the loan balance.

On April 29, 1985, the Mann Defendants executed two promissory notes to the Bank. The first note renewed a previous note of $215,000, and the second renewed a previous note of $85,000. On that date, the Mann Defendants also signed a mortgage pledging real property to secure the $300,000 of existing debt (the $215,000 and the $85,000 debts evidenced by the renewal notes) and $150,000 of contemplated future advances. In addition, they executed four security agreements, which were:

•A security agreement covering crops, livestock and farm equipment and vehicles signed on April 29, 1985 by John Mann, Frances Mann, Wilbur Mann, and Edna Mann, individually and as officers of Mann Farms as security for notes totalling $300,000;

•A security agreement covering a 1962 1 1/2 ton truck signed on May 15, 1985, by Wilbur Mann as security for the $215,000 note;

•A security agreement covering various farm vehicles signed on May 15, 1985 by John Mann as president of Mann Farms as security for the $215,000 note; and

•A security agreement covering livestock signed on May 13, 1985, by Patricia Mann Mingus as security for notes totalling $300,000 (Patricia Mingus is not a party to this appeal but had ownership interest in the cattle).

3

On May 1, 1985, the Bank advanced the Mann Defendants $7,500, which was evidenced by a promissory note and designated by the Bank as operating money for 1985. Around this time, the Bank approved two additional conditional loans of $25,000 each. Due to disagreements over the collateral for the conditional loans, the funds were not advanced.

On May 15, 1987, Mann Farms filed for bankruptcy under Chapter 12 of the United States Bankruptcy Code. On March 28, 1988, the Mann Defendants filed a tort claim against the Bank alleging, among other things, breach of the covenant of good faith and fair dealing and breach of fiduciary duty.

As required by the Bankruptcy Act, Mann Farms then filed its plan of reorganization and characterized the debt with the Bank as disputed. The reorganization plan specified that the Bank's lien status would be determined in conjunction with the bad faith action in state court. The Bank immediately contested the plan, arguing that Mann Farms could not seek to cancel the notes in state court and simultaneously seek to restructure the notes in the bankruptcy action. Mann Farms amended its plan of reorganization, and included the following clause:

> The Debtor will not contest the validity of notes, mortgages, or security interests of the Bank in state court or by adversary proceedings in this court. Debtor does intend to pursue the state court action previously commenced by the debtor, insofar as prosecution of the debtor's tort claims are concerned.

On June 22, 1988, the United States Bankruptcy Court for the District of Montana approved the amended plan of reorganization, and the Bank appealed to the United States District Court. That

4

court also affirmed the amended plan, and the Bank appealed to the United States Court of Appeals for the Ninth Circuit, arguing that the state court tort action would restructure de facto its status in the bankruptcy plan. The Ninth Circuit concluded that the tort claims were independent of the contractual rights of the parties and, therefore, that the Mann Defendants' action for tort damages in state court could not affect the approved plan of reorganization. In re Mann Farms, Inc. (9th Cir. 1990), 917 F.2d 1210, 1213.

Meanwhile, in state court, the District Court granted summary judgment in favor of the Bank on the tort claims. We affirmed in Mann Farms, Inc. v. Traders State Bank (1990), 245 Mont. 234, 801 P.2d 73 (Mann I).

On April 19, 1991, the United States Bankruptcy Court dismissed Mann Farms' bankruptcy proceeding; final decree closing the case was filed May 28, 1991. Two months later, the Bank filed a complaint against the Mann Defendants, seeking judgment on the promissory notes signed April 29 and May 1, 1985, which totalled $307,500, and foreclosure of the security agreements and mortgage described above. The complaint alleged that on May 15, 1987, the Mann Defendants had defaulted on the notes and that, at the time of the complaint, they owed the Bank $575,709.85. The Bank also sought to foreclose on a March 23, 1984, security agreement covering crops, cattle, and farm equipment signed by John Mann as president of Mann Farms as security for notes totalling $305,100.

John, Frances, Wilbur and Edna Mann (the Mann Family),

5

appearing pro se, answered the foreclosure complaint by generally denying its allegations. They also asserted third-party claims against Northeast Montana Bank Shares (the holding company for Traders State Bank of Poplar) and two bank employees, John Witte and Richard Loegering (the Bank Defendants), alleging that the Bank Defendants had committed fraud upon the court in the earlier bad faith action. Additionally, they asserted third-party claims against Bruce Fredrickson, Charles Cashmore, Malcolm Goodrich, and the law firm of Crowley, Haughey, Hanson, Toole & Dietrich (the Lawyer Defendants), claiming that the Lawyer Defendants had assisted in perpetrating this alleged fraud. They also asserted third-party claims against district court judge James Sorte, for abandoning his judicial function in the bad faith action, and against First Citizens Bank of Wolf Point, for conspiring with the Bank to subvert the judicial process.

On August 12, 1991, John Mann, acting in his capacity as president of Mann Farms, transferred all assets held by Mann Farms into the Mann Family Trust. The Bank then sought an injunction requiring the Mann Defendants to provide an accounting of all proceeds received from any sale of the Bank's collateral and to execute certain financing statements; the Bank also asked the court to enjoin the Mann Defendants from disposing of any of the Bank's collateral and from retaining any proceeds that may have been obtained from the collateral.

Upon motion of the Bank, on September 3, 1991, the District Court entered a default judgment on the foreclosure claim against

6

Mann Farms for failing to respond to the foreclosure complaint.

Judge Sorte and First Citizens Bank of Wolf Point moved to dismiss the third-party claims. The Bank Defendants and the Lawyer Defendants moved for summary judgment on the third-party claims asserted against them. After a hearing on the motions on October 3, 1991, the District Court dismissed the Mann Family's third-party claims against Judge Sorte and First Citizens Bank of Wolf Point. The court also granted the Lawyer Defendants and the Bank Defendants' motions for summary judgment and issued the injunction requested by the Bank.

On November 4, 1991, counsel appeared on behalf on Mann Farms. On November 15, Mann Farms moved to set aside the default judgment entered against it. The District Court set aside the default judgment and allowed Mann Farms to file an answer. Mann Farms' answer generally denied the foreclosure allegations and asserted various affirmative defenses. John Mann and the other family members continued to represent themselves pro se.

The Bank also moved for summary judgment on its foreclosure complaint. In response, Mann Farms moved for summary judgment on that issue; the Mann Family contended that summary judgment was improper because genuine issues of material fact existed regarding the foreclosure complaint. The Bank requested the District Court to hold the Mann Defendants in contempt for their continued failure to comply with the requirements of the October preliminary injunction.

On December 20, 1991, a hearing was held on the remaining

7

motions. Mann Farms orally moved to dissolve the injunction; the court denied the motion. After testimony and oral argument, the District Court granted summary judgment for the Bank on the issue of foreclosure. In a separate order, the District Court also found each Mann family member to be in contempt of court for failing to comply with its earlier injunction. This appeal follows.

During the lower court proceedings, John, Frances, Edna and Wilbur Mann signed the pleadings individually and represented themselves pro se. On appeal, we note that only John Mann and Mann Farms have filed a notices of appeal. In Montana, a non-lawyer may represent himself or herself, but only attorneys may practice law and represent others. Weaver v. Law Firm of Graybill, et al. (1990), 246 Mont. 175, 178, 803 P.2d 1089, 1091; § 37-61-210, MCA. John Mann may not appeal on behalf of Frances, Wilbur and Edna Mann. Therefore, John Mann and Mann Farms are the only appellants properly before this Court.

Does the failure of John Mann and Mann Farms, Inc. to post a supersedeas bond on appeal or otherwise stay the proceedings below render this appeal moot?

As a threshold issue, the Bank argues that because it has foreclosed upon the security for the debt, and neither John Mann nor Mann Farms posted a supersedeas bond or stayed the lower proceedings, this appeal is moot. It cites First Sec. Bank of Kalispell v. Income Properties, Inc. (1984), 208 Mont. 121, 126, 675 P.2d 982, 985, which held that a defendant is considered to have acquiesced in a judgment if a bond is not posted or a stay of

8

proceedings obtained, citing Gallatin Trust & Sav. Bank v. Henke (1969), 154 Mont. 170, 461 P.2d 448.

Since First Sec. Bank was decided, we have held that where payment or performance of a judgment by an appellant is involuntary, the appellant does not acquiesce to the judgment and the right to appeal is not affected. LeClair v. Reiter (1988), 233 Mont. 332, 335, 760 P.2d 740, 742 (emphasis added). In LeClair, the respondents foreclosed on a contract for deed and filed the quitclaim deeds prior to our review. Like the Bank in this case, the respondents argued that because they repossessed the property and the appellant had not filed a supersedeas bond or otherwise stayed execution, the appeal was moot. LeClair, 760 P.2d at 742. We expressly overruled Henke and, in effect First Sec. Bank, and held that the appeal was not moot because the defendant had not voluntarily surrendered the property. LeClair, 760 P.2d at 742; First Nat'l Bank in Eureka v. Giles (Mont. 1986), 43 St.Rep. 1326, 1328.

As in LeClair, Mann Farms and John Mann did not voluntarily relinquish their real estate and personal property to the Bank; the Bank foreclosed. We conclude that the failure to post a supersedeas bond or otherwise stay the proceedings below does not render Mann Farms and John Mann's appeal moot.

Did the District Court err in concluding that the claims the Mann Family asserted against the third-party defendants did not constitute sufficient grounds for relief from the Mann I judgment pursuant to Rule 60(b), M.R.Civ.P.?

In response to the Bank's foreclosure complaint, the Mann

9

Family set forth a variety of third-party claims. John Mann appeals only the dismissal of the third-party claims against the Bank Defendants and the Lawyer Defendants. The substance of those claims, as paraphrased by this Court, are:

- that the Bank Defendants conspired with the Lawyer Defendants to deceive the court and subvert justice in Mann I;

- that Bank Defendant Loegering and Lawyer Defendant Fredrickson perjured themselves during testimony and argument in Mann I;

- that the Lawyer Defendants used "forceful argument" and "artful pleading" to develop a fictitious theory of the case that misled the district court in Mann I; and

- that the Lawyer Defendants misrepresented facts to the district court in Mann I.

We note initially that although these allegations originally were pled as third-party claims, John Mann testified at the October 3, 1991, hearing on the third-party claims that the claims were filed under Rule 60(b), M.R.Civ.P., and had no standing outside of that rule. The District Court concluded that, even if all the allegations against the Lawyer Defendants and the Bank Defendants were true, the claims did not constitute sufficient grounds for maintaining an independent equitable action to set aside the judgment under Rule 60(b), M.R.Civ.P. The District Court also set forth alternative bases for granting summary judgment in favor of both the Lawyer Defendants and the Bank Defendants. Because we find Rule 60(b), M.R.Civ.P., dispositive, we need not address the alternative theories.

We have stated that a party seeking relief from a judgment through an independent equitable action under Rule 60(b) has three

10

avenues of relief: extrinsic fraud, lack of personal notification, and fraud upon the court. Salway v. Arkava (1985), 215 Mont. 135, 140, 695 P.2d 1302, 1305; Brown v. Small (1992), 251 Mont. 414, 420, 825 P.2d 1209, 1213. Lack of personal notification is inapplicable to the present case; accordingly, we examine the third-party claims to determine whether extrinsic fraud or fraud upon the court provide sufficient grounds for the Rule 60(b) action.

Extrinsic fraud is defined as fraud that has prevented the unsuccessful party from presenting his or her case. Extrinsic fraud is collateral to the matters tried by the court and is not fraud in the matters on which the judgment was rendered. Brown v. Jensen (1988), 231 Mont. 340, 346, 753 P.2d 870, 874. We have held repeatedly that neither perjured testimony nor false or fraudulent allegations used in obtaining a judgment constitute extrinsic fraud. Jensen, 753 P.2d at 875; Salway, 695 P.2d at 1307.

It is apparent that none of the Mann family's allegations, even if taken as true, constitute extrinsic fraud. None of the allegations regarding the Lawyer Defendants or the Bank Defendants are collateral to the action in Mann I; all focus on alleged fraud during the proceedings in Mann I. Accordingly, we conclude that the Mann family's allegations are insufficient for relief from the judgment for extrinsic fraud pursuant to Rule 60(b), M.R.Civ.P.

Rule 60(b), M.R.Civ.P. also allows relief from a judgment for "fraud upon the court." We have characterized fraud upon the court as that species of fraud which subverts or attempts to subvert the

11

integrity of the court itself. Salway, 695 P.2d at 1306; Small, 825 P.2d at 1213. Fraud which attempts to defile the court has been construed to include only the most egregious conduct, such as bribery of a judge or member of the jury or the fabrication of evidence in which an attorney has been implicated. Salway, 695 P.2d at 1306.

In this case, the record does not support any of the Mann family's allegations, nor do such allegations, even if supported by the record, constitute fraud upon the court. Fraud between the parties, without more, does not rise to the level of fraud upon the court. Small, 825 P.2d at 1213. John Mann can point to no outside influence on the judicial proceedings in Mann I; the claims, even if true, would constitute fraud between the parties. Additionally, "forceful argument" and "artful pleading" do not rise to the egregious conduct contemplated by this rule, but more closely relate to the Lawyer Defendants' exercise of their duty to zealously represent their client.

Because John Mann can demonstrate neither extrinsic fraud nor fraud upon the court, we hold that the District Court did not err in concluding that the third-party claims Mann asserted against the Bank Defendants and Lawyer Defendants did not constitute sufficient grounds for maintaining an independent equitable action for relief from the Mann I judgment under Rule 60(b), M.R.Civ.P.


Did the District Court err in granting summary judgment for the Bank on its foreclosure complaint?

The District Court granted the Bank's summary judgment motion

12

on its foreclosure complaint and issued findings of fact, conclusions of law and a decree of foreclosure. It concluded that the Bank had established a prima facie case of foreclosure and that all of the Mann Defendants' defenses to foreclosure were barred under the doctrine of res judicata. Specifically, the court opined that the gravamen of the defenses was that the Bank committed some form of fraud in its lending relationship, and that those matters were raised or could have been raised in Mann I. The court also set forth additional legal doctrines supporting its decision.

Our standard in reviewing a grant of summary judgment is the same as that initially utilized by the trial court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is appropriate when the pleadings, depositions, and other documents on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. With that standard in mind, we review the District Court's decision.

The District Court's grant of summary judgment turned on its conclusion that res judicata barred all of the Mann Defendants' defenses. Having essentially removed the defenses from consideration, the District Court then concluded that no genuine issue of material fact remained and the Bank was entitled to judgment as a matter of law. Therefore, we initially review whether the District Court correctly concluded that res judicata barred the defenses asserted by the Mann Defendants; our review of legal conclusions is plenary. See Steer, Inc. v. Dep't of Revenue

13

(1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

The principle underlying the doctrine of res judicata is that a party is prohibited from relitigating a matter that the party has already had an opportunity to litigate. Whirry v. Swanson (1992), 254 Mont. 248, 250, 836 P.2d 1227, 1228. The four criteria for res judicata are:

> 1) the parties or their privies must be the same;
> 2) the subject matter of the action must be the same;
> 3) the issues must be the same and relate to the same subject matter; and
> 4) the capacities of the persons must be the same in reference to the subject matter and to the issues.

Whirry, 836 P.2d at 1228. Furthermore, once there has been full opportunity to present an issue for judicial decision in a given proceeding, the determination of the court in that proceeding must be accorded finality as to all issues raised or which fairly could have been raised. Filler v. Richland County (1991), 247 Mont. 285, 291, 806 P.2d 537, 541.

In this case, the parties are the same in both actions; the Mann Defendants sued the Bank in Mann I, and the Bank's foreclosure complaint named all Mann Defendants as defendants in the present action. The subject matter is also generally the same; both suits revolve around the banking relationship between the Bank and the Mann Defendants.

As in Whirry, the third element--whether the issues are the same--is the key element here. In order to determine that the issues are the same, the fundamental or essential question involved in the second case must have been raised and determined in the first case. Whirry, 836 P.2d at 1229, citing Baertsch v. County of

14

Lewis and Clark (1986), 223 Mont. 206, 727 P.2d 504. Thus, scrutiny of the precise questions involved in Mann I and those involved in the present case is necessary.

In Mann I, the complaint against the Bank alleged tort claims, including breach of the covenant of good faith and fair dealing, negligent misrepresentation, and breach of fiduciary duty. As paraphrased by the District Court, the facts supporting the Mann Defendants' tort claims in Mann I were:

1. The Bank's decision to withdraw $25,000 of conditional operating credit in 1985.
2. The Bank's discussions with Citizens First National Bank of Wolf Point regarding Mann Farms' financial situation.
3. The Bank's refusal to loan operating funds to Mann Farms during the spring of 1986.
4. The SBA's refusal to loan disaster relief funds unless certain conditions were met.

Here, the Bank's complaint alleged its prima facie case of foreclosure. The Mann Family generally denied the foreclosure allegations in their answer and, in response to the Bank's motion for summary judgment, set forth in detail a multiplicity of defenses to foreclosure. Mann Farms' answer also included defenses. The majority of the Mann Defendants' defenses to foreclosure sounded in contract; however, a few asserted defenses were tort-related. We address first whether res judicata bars the Mann Defendants' contract-related defenses.

Although the events surrounding both suits occurred in the same time frame, the issues presented in the tort action are distinct from those inherent in the contract defenses raised to the foreclosure complaint. The issues in the first case were the Mann

15

Defendants' allegations of tortious conduct by the Bank over an extended period of time and their resulting entitlement to damages. The fundamental question raised and determined in Mann I was whether the Bank's conduct in dealing with the Mann Defendants violated a standard of due care. The fundamental question here is whether the mortgage, security interests and notes are valid and enforceable contracts. We conclude that the issues involved in Mann I were different from those raised by the contract defenses to foreclosure in this case.

We find support for this conclusion in Bras v. First Bank & Trust Co. (Okla. 1985), 735 P.2d 329, a closely analogous case. In Bras, the bank foreclosed upon notes executed by the debtor, and the debtor raised the defense of illegality of the notes due to self-dealing by the bank. The bank was granted summary judgment on the notes. Bras, 735 P.2d at 330. The debtor then sued the bank in tort, alleging conspiracy to commit fraud based on circumstances surrounding the original loan. The Oklahoma Supreme Court concluded that his second suit was not barred by the first, stating:

> The [initial] summary judgment . . . necessarily determined that the petitioner was primarily liable on the note and that such note was not illegal because of any "self-dealing." Unlike the former action, the present one contains allegations of conspiracy to commit fraud. We find no common elements between the fraud action, a tort claim involving misrepresentation, and the contract action in which illegal self-dealing was raised as a defense to the validity of the note.

Bras, 735 P.2d at 333. Although the Mann cases occurred in reverse order, the same is true here. The tort issues involved in Mann I

16

and the contract issues raised by the Mann Defendants' contract-related defenses to foreclosure are not the same; therefore, res judicata does not bar the defenses to foreclosure.

The Bank argues that although the validity of the notes was not raised and determined in the first case, that issue fairly should have been raised in Mann I. The Bank is correct that res judicata prohibits both claims that were raised and claims that should have been raised from being relitigated. Higham v. City of Red Lodge (1991), 247 Mont. 400, 403, 807 P.2d 195, 197. We disagree, however, that the Mann Defendants' defenses contesting the validity of the notes should have been raised in Mann I.

Mann Farms filed for bankruptcy on May 15, 1987, and the bankruptcy proceedings were eventually dismissed and closed in May of 1991. The Mann Defendants commenced their tort action in Mann I in March of 1988, and this Court affirmed the District Court's grant of summary judgment on November 8, 1990. The entirety of the tort action took place during the period Mann Farms was in bankruptcy. During the pendency of Mann Farms' bankruptcy proceeding, and pursuant to its plan of reorganization, the debtor could not challenge the validity of the notes and security interests. The plan also specifically allowed Mann Farms to proceed with the tort claims in state court. The Bankruptcy Court, the United States District Court and the Ninth Circuit Court of Appeals all approved Mann Farms' amended plan of reorganization. See In re Mann Farms, Inc., 917 F.2d at 1215.

The Ninth Circuit opinion also makes clear that Mann Farms'

17

agreement not to contest the validity of the notes was contingent on the implementation of the bankruptcy plan of reorganization, by noting "the debtor's agreement not to relitigate the matters concluded by the approved plan . . . ." *In re Mann Farms, Inc.,* 917 F.2d at 1213 (emphasis added). Here, however, the bankrupcty action ultimately was dismissed, and the reorganization plan was not implemented; thus, issues surrounding the validity of the debt to the Bank were never concluded pursuant to the approved plan. Under such circumstances, Mann Farms' agreement not to "relitigate" those matters was extinguished when the bankruptcy action was dismissed.

The bankruptcy action was formally closed on May 28, 1991, some months after our decision in *Mann I*. Only then could the Bank foreclose on the notes, and only then could Mann Farms assert any claims it had regarding the validity of the loan documents. Had Mann Farms' bankruptcy been pursued to a final conclusion and the debts discharged or restructured, Mann Farms could not have contested the validity of those documents; nor would such a challenge have been necessary.

We conclude that the District Court's determination that the Mann Defendants could have raised their contract-related defenses to the notes in the earlier action is incorrect. Therefore, we hold that the District Court erred in granting summary judgment to the Bank on the basis that res judicata barred the Mann Defendants' contract-related defenses.

For similar reasons, the District Court did not err in

18

concluding that the Mann Defendants' tort-related defenses were precluded by res judicata. For example, the Mann Family raised questions regarding whether the Bank owed the Manns a "general duty of care" and whether the Bank was "negligent" in its dealings with the Manns in their response to the Bank's motion for summary judgment. Mann Farms' answer included the affirmative defense of "contributory negligence." Pursuant to our analysis and discussion above, we conclude that tort-based allegations or defenses raised by the Mann Defendants which do not directly concern the contractual defenses to the notes, mortgage, and security interests at issue are barred by res judicata because they could have been raised in the earlier tort action.

Having determined that the Mann Defendants' contract-related defenses are not barred by res judicata the issue is whether genuine issues of disputed fact remain and whether the moving party is entitled to judgment as a matter of law on those defenses. To prevail on summary judgment, the initial burden on the Bank, as the moving party, is to establish that the evidence raises no genuine issue of material fact. Mayer Bros. v. Daniel Richard Jewelers (1986), 223 Mont. 397, 399, 726 P.2d 815, 816. As noted above, the District Court found that the Mann Defendants had executed the promissory notes, security agreements and mortgage at issue and that the Mann Defendants were in default on those instruments. It concluded that the Bank had established a prima facie case for foreclosure and, therefore, had met its initial burden on summary judgment. We agree.

19

When the movant has met this initial burden, the burden shifts to the party opposing summary judgment to show by present facts of a substantial nature that a material fact issue does exist. Mayer, 726 P.2d at 816. The party opposing summary judgment may not rest upon the mere allegations of the pleadings, but has an affirmative duty to respond by affidavits or sworn testimony with specific facts that show a genuine issue of fact remains for trial. See Mayer, 726 P.2d at 816-7. Conclusory or speculative statements or allegations in pleadings, arguments in briefs, and arguments made by counsel do not constitute sufficient factual evidence to carry the non-moving party's burden. See Sprunk v. First Bank System (1992), 252 Mont. 463, 466-7, 830 P.2d 103, 104-5; Mayer, 726 P.2d at 817; Eitel v. Ryan (1988), 231 Mont. 174, 178, 751 P.2d 682, 684.

Because of its conclusion that res judicata barred the Mann Defendants' defenses to foreclosure, the District Court did not reach the question of whether the Mann Defendants had met their burden in opposing summary judgment on the matter of foreclosure. We have determined that the District Court erred in concluding that res judicata barred the Mann Defendants' contract-related defenses. Thus, the question of whether the Mann Defendants have presented sufficient factual evidence to demonstrate a genuine issue of fact on the contract-related defenses remains to be determined by the District Court on the basis of the record before it.

Can the District Court's grant of summary judgment on foreclosure be upheld as to Mann Farms under the doctrines of

20

judicial estoppel, equitable estoppel or quasi-estoppel?

As an alternative basis for summary judgment, the District Court concluded that judicial estoppel, equitable estoppel and quasi-estoppel barred Mann Farms from disputing the validity of the debt instruments in the foreclosure action. The District Court did not apply the estoppel doctrines to the Mann Family. Although the parties do not argue these doctrines on appeal, this Court will examine the record to determine whether separate support exists for the District Court's result. See Wolfe v. Webb (1992), 251 Mont. 217, 234, 824 P.2d 240, 250. We conclude that the aforementioned doctrines do not bar Mann Farms from contesting the documents in this case.

Judicial estoppel binds a party to his or her judicial declarations, and precludes a party from contradicting those declarations in a subsequent action or proceeding. DeMers v. Roncor, Inc. (1991), 249 Mont. 176, 180, 814 P.2d 999, 1001. The District Court concluded that the following clause in Mann Farms' reorganization plan for bankruptcy triggered the doctrine:

> The Debtor will not contest the validity of notes, mortgages, or security interests of the Bank in state court or by adversary proceedings in this court.

The court concluded that because Mann Farms had asserted this proposition in bankruptcy proceedings, it could not challenge the documents in defense of foreclosure.

The elements of judicial estoppel are:

> 1) the party being estopped must have knowledge of the facts at the time the original position is taken;
> 2) the party must have succeeded in maintaining the original position;

21

3) the position presently taken must be actually inconsistent with the original position; and
4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party.

DeMers, 814 P.2d at 1001-2. Applying those factors to the present case, it is clear that neither element two nor element four is satisfied here.

Mann Farms' bankruptcy proceeding was dismissed in May of 1991. Mann Farms did not "succeed" in its bankruptcy proceeding; its debts were not discharged nor its reorganization plan fully implemented. We stated in DeMers that acquiring a judgment in its favor is not always necessary to satisfy this element, but the party must have been at least successful in arguing its original position against the party asserting the estoppel. DeMers, 814 P.2d at 1002. The record contains no evidence that would allow us to conclude that Mann Farms successfully maintained the reorganization plan and the pertinent clause against the Bank.

Furthermore, the record is devoid of evidence that the Bank was misled by Mann Farms' original position or that allowing Mann Farms to change its position adversely affects the Bank. On the contrary, under the reorganization plan, the Bank was to receive a $263,467.03 "cram down" debt in periodic payments. After foreclosure, the Bank had at its disposal a foreclosure sale and the possibility of a deficiency judgment against the individual Mann family members--for the full amount of its debt. We conclude that the clause in Mann Farms' reorganization plan, a plan that was ultimately dismissed, does not trigger judicial estoppel and Mann

22

Farms is not barred from challenging the validity of the security agreements in foreclosure proceedings.

For similar reasons, the doctrines of equitable estoppel and quasi-estoppel are inapplicable to the present case. Equitable estoppel requires reliance by the party asserting the estoppel on an act or representation, and this reliance must induce the party asserting estoppel to change its position for the worse. Wassberg v. Anaconda Copper Co. (1985), 215 Mont. 309, 316, 697 P.2d 909, 914. Although this Court has not defined "quasi-estoppel," the phrase is used interchangeably with equitable estoppel. See 28 Am.Jur.2d Estoppel and Waiver § 29 (1966). As discussed above, the record contains no evidence that would support the application of the estoppel doctrines.

Did the District Court err in refusing to dissolve an injunction and in finding John Mann in contempt for failing to abide by the injunction?

On September 19, 1991, the Bank applied for a preliminary injunction under § 27-19-201, MCA, against the Mann Defendants. On October 3, 1991, following the evidentiary show cause hearing, the District Court issued the requested injunction. The Mann Defendants refused to comply with the terms, and the District Court issued an order requiring the Mann Defendants to appear and show cause why they should not be held in contempt for failing to comply with the October injunction. At the show cause hearing in December, Mann Farms orally moved to dissolve the injunction; the District Court denied the motion and found the Mann Defendants in

23

contempt.

Mann Farms argues that the District Court erred in denying its motion to dissolve the injunction; in essence, this argument goes to the propriety of the District Court's decision to issue the injunction itself. Mann Farms contends that the District Court issued the injunction without any legal authority, and that the injunction improperly resolved a contested issue regarding alleged lapsed security interests. The Bank, on the other hand, argues that the injunction was properly issued pursuant to § 27-19-201, MCA.

The injunction in question contained six integral provisions. Mann Farms challenges only the following provision of the injunction:

It is further ordered that the Mann Defendants complete the following affirmative acts:

To execute the appropriate security documents, including security agreements and Uniform Commercial Code Financing Statements, which documents are necessary to maintain the Bank's security and priority positions in its collateral pending appropriate resolution of the above captioned litigation, and in order to bring the Bank's security documents into conformity with the Food Security Act of 1985.

Section 27-19-201, MCA, lists the specific circumstances under which a District Court may issue a preliminary injunction. The District Court did not include supporting findings of fact and conclusions of law when it issued this injunction in October of 1991. We have specifically required that findings of fact and conclusions of law must accompany preliminary injunctions. Ensley v. Murphy (1983), 202 Mont. 406, 408, 658 P.2d 418, 419. Rule

24

52(a), M.R.Civ.P., expressly provides that:

> [I]n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

An important purpose of findings of fact and conclusions of law is to aid the appellate court in its review of the decision. See Continental Realty, Inc. v. Gerry (1991), 251 Mont. 150, 153, 822 P.2d 1083, 1085.

As in Ensley, we have no basis for determining whether the disputed portion of the October injunction was properly included. We cannot ascertain the facts on which the District Court relied or the legal basis on which it issued the injunction or the order denying Mann Farms' motion to dissolve it. Consequently, we cannot properly determine whether the District Court erred. Therefore, we vacate the preliminary injunction and remand for reconsideration and entry of findings and conclusions. See Ensley, 658 P.2d at 419.

Finally, John Mann also filed a notice of appeal of the order finding him in contempt for failing to abide by the injunction. Contempt orders generally are not appealable in Montana. Section 3-1-523, MCA, states in relevant part:

> **Judgment and orders in contempt cases final.** The judgment and orders of the court or judge made in cases of contempt are final and conclusive. There is no appeal, but the action of a district court or judge can be reviewed on a writ of certiorari by the supreme court
> . . . .

John Mann has not filed the appropriate writ as directed by the statute. This issue, therefore, is not properly before this

25

Court.

As a final matter we note that, by order dated October 14, 1992, this Court denied a motion by the Bank to strike John Mann's briefs and for sanctions; we stated therein that we would address the issue of sanctions against John Mann in our decision on appeal. In light of our determinations herein, we conclude that further consideration of the issue of sanctions is inappropriate at this time.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

May 13, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


JOHN J. MANN
P.O. Box 2219
Wolf Point, MT  59201


TERRY WALLACE
Attorney at Law
P.O. Box 4763
Missoula, MT 59806



Charles R. Cashmore
Bruce A. Fredrickson
Malcolm H. Goodrich
CROWLEY, HAUGHEY, HANSON, TOOLE & DIETRICH
P.O. Box 2529
Billings, MT  59103-2529



ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy